HORACE B. LIVERIGHT, Appellant, *v.* WALDORF THEATRES CORPORATION, Respondent.

First Department, April 8, 1927.

**Equity — injunctions — play owner not entitled to injunction compelling theatre owner to permit production of play of questionable character — remedy at law adequate — elements of damages.**

A court of equity should not issue its mandate against a theatre owner which would compel said owner to permit the production of a play which has come under the condemnation of the police and the authorities charged with the enforcement of the criminal law, when there is a remedy at law, which, while

perhaps not fully adequate in a sense, is not inadequate as the law values the damages sustained.

Accordingly, the owner of a play known as " The Captive," is not entitled to an injunction compelling the defendant theatre owner to permit the production of said play in the theatre, where said owner has refused, under the provisions of its lease with the plaintiff, to permit the production of the play on the ground that it would infringe the law (Penal Law, § 1140-a), particularly where it appears that the members of the cast and former producers of said play have been arrested, charged with committing a crime.   Moreover, the plaintiff, who subsequently purchased the play, has a remedy at law if he be correct in his conclusion as to the morality of the play.

Primarily, the result to the play owner will be the loss of profits from the failure of production of the play.   His artistic or literary interest in the portrayal of the drama cannot be protected.

APPEAL by the plaintiff, Horace B. Liveright, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 8th day of March, 1927, denying plaintiff's motion for an injunction *pendente lite.*

*Arthur Garfield Hays* of counsel [*John Schulman* and *Albert E. Kane* with him on the brief; *Hays, St. John & Buckley,* attorneys], for the appellant.

*J. W. Friedman* of counsel [*Harry H. Oshrin,* attorney], for the respondent.

McAVOY, J.   At Special Term the application for an injunction pending trial of this cause was denied.   We concur in deciding that as matter of law and of judicial polity the ruling was right.

From the complaint it appears that the plaintiff is a theatrical manager and has the rights to a play known as " The Captive." The plaintiff made a lease with the Waldorf Theatres Corporation in the city of New York of the Waldorf Theatre by which he agreed to produce that play at that theatre from the 4th day of April, 1927.   This lease contains a provision that if the play violates the law or is adjudged to do so in any court of competent jurisdiction, the defendant company may refuse to permit the production of the play.   On February 26, 1927, the defendant company, which is the owner of the theatre, gave the plaintiff notice that it would not permit him to produce the play in its theatre on the ground that its production would infringe the law.   The letter of defendant states that it was so advised after a conference with the district attorney of New York county, who asserted that the play was indecent, immoral and obscene.

The plaintiff alleges in its complaint and avers in a supporting affidavit that the play is not immoral or obscene; that he has a large financial interest in the production of the play; that he will

suffer irreparable damage and be deprived of his property interest unless the defendant be enjoined from carrying out its refusal to allow him to enter the theatre for this production.    It is also alleged that plaintiff has no adequate remedy at law.

In the affidavit of plaintiff he deposes that the play was produced in New York city at the Empire Theatre from September 26, 1926, to February 15, 1927; that it was the work of an eminent French author; that the play was produced in various other countries; that it has received commendatory criticisms by theatrical critics; and that a play jury of citizens attended its performance at the instance of the district attorney and sanctioned the continuance of the play.    He also sets forth that clergymen of all denominations, physicians and scientists have commended the play; that the book of the play has been circulated in book shops in New York, and that it is on file in the New York Public Library in the reading room, which is not restricted.    The affidavit has the promissory averment that the production of the play will be as it appears in the book as submitted.

The district attorney in February last caused the arrest of the actors and producers of this play, charging them with committing a crime.    Later he withdrew the charge upon the condition that the Frohman Company, the then producers, withdraw it until some court decided that it was not in violation of the law.    The Frohman Company returned all their rights to the production of the play to the author and plaintiff herein then acquired the rights. As indicating good faith, he asserts that he had endeavored to acquire the rights before the Frohman Company's production.

There is no affidavit filed in opposition, but the answer denies paragraph 9 of the complaint, which is the paragraph which sets out that the play is not indecent, immoral or obscene or in violation of any section of the Penal Law or of the mentioned covenant of the lease.    We are asked now to determine from the nature of the proof submitted, primarily from the book itself, whether the play is immoral or indecent, and secondly, assuming that it is not, whether an injunction which will have the effect of restraining the public authorities from interfering with the play, should be granted by an equity court.    While this injunction order would not run against the police officials or the district attorney, it would, in effect, apprise them that this court had determined that the owner of the theatre is not justified in excluding the play from its stage, which necessarily would involve the conclusion that we had determined that there was no possible conclusion or opinion to be derived from a reading of the book, or from the prescribed action in the performance of the play, which could in any wise be deemed by a reasonable

person as coming within the prohibitions of section 1140-a of the Penal Law (as added by Laws of 1909, chap. 279), which, so far as here material, follows: "Any person who as owner, manager, director or agent or in any other capacity prepares, advertises, gives, presents or participates in, any obscene, indecent, immoral or impure drama, play, exhibition, show or entertainment, which would tend to the corruption of the morals of youth or others * * * shall be guilty of a misdemeanor." The question is whether or not the scenes or lines or situations outlined would have the prohibited effect, or, as the statute says, "tend to the corruption of the morals of youth or others." It cannot be said dogmatically that the morals of youth, or even of adults, would not be affected by presenting a theme of the character here exhibited with the action and dialogue which accompany it.

The action might give to some minds a lecherous swing causing a corruption of the moral tone of the susceptible members of the audience. In any event we are convinced that a court of equity should not give its mandate to a theatre owner which would compel him to permit the production of a play which has come under the condemnation of the police and the authorities charged with enforcement of the criminal law, when there is a remedy at law which, while perhaps not fully adequate in a sense, is not inadequate as the law views the damages sustained.

Primarily the result to the play owner will be the loss of profits from the failure of production of the play. His artistic or literary interest in the portrayal of the drama cannot be protected. He has a remedy at law for damages assessable by a jury trial, if he be correct in his conclusion as to the morality of his play and can convince a jury that no immoral suggestion or lewd or lecherous instinct may be aroused as a result of performing the play.

To countenance the procedure resorted to in this application would ultimately constitute the civil arm of the courts as censors of the drama and its allied arts of literature, of painting and of sculpture. One need but have the contractual duty imposed to produce, publish or install a play, book or work of art and upon refusal of performance demand that the arm of the court be raised to compel the execution of the compact. The law places no such duty or burden on the civil side of the judicial force. The suppression of vicious and immoral plays or publications is in its primary stage committed to the police officials and prosecuting authorities whose activities are immediately cognizable in the criminal courts by examination and trial of the accused. The regulation of dramatic productions by compulsion or interposition of the injunctive process has no analogy or parallel in the realm of equitable juris-

diction hitherto entertained. We are not prone so to widen its sphere as to embrace it.

The order appealed from should be affirmed, with ten dollars costs and disbursements to the respondent.

DOWLING, P. J., MERRELL, FINCH and PROSKAUER, JJ., concur.

Order affirmed, with ten dollars costs and disbursements.